UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KEVIN C. McMUNIGAL,** | ) | CASE NO.  1:09CV01674 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | **ORDER ADOPTING REPORT AND** |
| **KATE E. BLOCH,** | ) | **RECOMMENDATION OF** |
| | ) | **MAGISTRATE JUDGE** |
| | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon Plaintiff's Objection to the Report and Recommendation of the Magistrate Judge, recommending that Plaintiff's claims be dismissed without prejudice for lack of personal jurisdiction over Defendant.  For the following reasons, the Court adopts the Magistrate Judge's Report and Recommendation and dismisses the case for lack of personal jurisdiction.

**I. FACTUAL BACKGROUND**

Plaintiff Kevin C. McMunigal ("Plaintiff") is a resident of Ohio and a professor at Case Western Reserve University School of Law.   In 1998, Aspen Publishers ("Aspen"), a Delaware

1

corporation with its principal place of business in Maryland, approached Plaintiff and asked if he would be interested in writing a casebook to be published by Aspen.  Aspen also asked Plaintiff about potential authors to collaborate with on the book, and Plaintiff suggested Defendant Kate E. Bloch ("Defendant").  Defendant is a law school professor, and a resident of California.

In 1998, Plaintiff contacted Defendant and asked if she would be interested in collaborating with him on a criminal law casebook for Aspen.  (Doc. No. 10 Exh. 1 at ¶ 7) Throughout 1998 and 1999 Plaintiff and Defendant communicated through a series of phone calls and emails regarding the casebook.  After many such communications and revisions, Plaintiff and Defendant drafted a proposal which Aspen accepted. Together, Plaintiff and Defendant entered into a contract with Aspen for the publishing of a criminal law casebook.  The contract provided that the sale and marketing of the casebook would be handled exclusively by Aspen.  (Compl, Exh. 2. at ¶ 7)

Plaintiff and Defendant divided responsibility for the authorship of respective portions of the casebook, which each was to complete independently.  Plaintiff and Defendant continued to communicate via phone, mail, and email regarding the content and organization of the book, however, the Defendant never visited Ohio in connection with the casebook.  (Doc. No. 8 Exh. 1 at ¶ 37)

Plaintiff filed his Complaint on July 20, 2009, asserting that Defendant caused various delays in completing the casebook and, as a result, Aspen opted against publishing a revised edition of the casebook.  Plaintiff also asserts that he and Defendant engaged in negotiations which resulted in a "Separation Agreement," dividing the copyright to the materials in the casebook.  Plaintiff seeks declaratory relief, injunctive relief, specific performance, and

monetary damages.

On November 20, 2009, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction. Plaintiff filed a Brief in Opposition on November 30, 2009, which Defendant replied to on December 23, 2009. The case was assigned to a Magistrate Judge and on April 21, 2010, the Magistrate Judge made his Report and Recommended Decision. (Doc. No. 14) The Magistrate Judge recommended that Defendant's Motion to Dismiss be granted, and that Plaintiff's claims be dismissed without prejudice for lack of personal jurisdiction over Defendant. On April 28, 2010, Plaintiff filed an Objection to the Magistrate Judge's Report and Recommendation (Doc. No. 15) and on May 12, 2010, Defendant filed a Response to Plaintiff's Objections.

## II. STANDARD OF REVIEW

### A. Civil Rule 72(b) Standard

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636, the District Court is required to review *de novo* any portion of the Magistrate Judge's Report to which a specific objection is made. A party who fails to file an objection waives the right to appeal. *U.S. v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). In *Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Supreme Court held: "It does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."

Local Rule 72.3(b) recites in pertinent part:

The District Judge to whom the case was assigned shall make a *de novo*
determination of those portions of the report or specified proposed findings or
recommendations to which objection is made and may accept, reject, or modify,
in whole or in part, the findings or recommendations made by the Magistrate

3

>Judge.  The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record.  The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

### **B. Civil Rule 12(b)(2) Standard**

In a case before a federal court upon diversity jurisdiction, the Court looks to the law of the forum state to determine whether personal jurisdiction exists.  *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota,* 545 F.3d 357, 361 (6th Cir. 2008).  The Court applies a two-step inquiry when examining if it has personal jurisdiction over the parties. "First, we must determine whether Ohio law authorizes jurisdiction.  If it does, we must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Id.* Where personal jurisdiction is challenged in a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that jurisdiction exists.  *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974).  However, the nature of plaintiff's burden changes depending on the manner in which the district court approaches the motion.   *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988).  Because this Court is deciding Defendants' motions solely on the written materials, Plaintiff is only required to make a prima facie showing that personal jurisdiction exists.  *Id.* at 1168-69.  In addition, since the Court finds no need for an evidentiary hearing, "the burden of the plaintiff is relatively slight" and the Court must construe the pleadings and affidavits in the light most favorable to Plaintiff.  *Id.* at 1169.

### **III. PLAINTIFF'S OBJECTIONS**

Plaintiff raises several objections to the Report and Recommendation of the Magistrate

4

Judge, each of which is discussed in turn.

**<u>1. The Magistrate Judge's Assumption that Defendant's Acts Fell Within the Ohio Long -Arm Statute</u>**

Plaintiff's first objection to the Magistrate Judge's Report and Recommendation is that the Magistrate Judge erred in assuming, *arguendo,* that Defendant's acts satisfied Ohio's Long Arm Statute.  Plaintiff asserts that the Magistrate Judge should have made a "recommended finding" based on the facts that Defendant's acts satisfied the Long-Arm statute, rather than "assuming" the statute was satisfied and moving on to constitutional due process analysis.  The Magistrate Judge effectively collapsed the personal jurisdiction inquiry into one step by "assuming" Defendant's actions satisfy the Long-Arm statute and moving on to due process analysis.  However, if anything, the Magistrate Judge's "assumption" was beneficial rather than prejudicial to the Plaintiff, because personal jurisdiction over Defendant does not exist under Ohio's Long-Arm statute.

The Ohio Supreme Court has held that  Ohio's Long-Arm statute does not extend the jurisdiction of Ohio courts to the limits of constitutional due process.  *See Goldstein v. Christiansen*, 70 Ohio St.3d 232 (Ohio 1994).  Thus, in order to comport with the Ohio Supreme Court's decision, it is necessary to analyze whether personal jurisdiction is proper under Ohio's Long-Arm statute prior to considering whether personal jurisdiction may be exercised consistent with constitutional due process.  *See Matrix Essentials, Inc. v. Harmon Stores, Inc.*, 205 F. Supp.2d 779, 785 (N.D. Ohio 2001).

The pertinent section of the Ohio Long-Arm statute, O.R.C. § 2307.382(A), allows personal jurisdiction over out-of-state defendants when the cause of action arises out of their

5

"transacting business in this state." "The phrase 'transacting any business' is broad and encompasses more than 'contract.'" *Clark v. Connor*, 82 Ohio St.3d 309, 312 (1998). "The term 'transact' as utilized in the phrase 'transacting any business' encompasses to 'carry on business' and to 'have dealings.'" *Goldstein*, 70 Ohio St.3d 309 at 312.

In the past, courts have found no better guideline than the "bare wording" of the statute to establish whether a non-resident has transacted business within Ohio. *See, e.g., KB Circuits Inc. v. BECS Technology, Inc.,* No. 00AP 621, 2001 LEXIS 116, *2 (Ohio App. 10 Dist., Jan. 18, 2001); *McKinley Machinery, Inc. v. Acme Corrugated Box Co., Inc.* No. 98CA007160, 2000 LEXIS 3090, *2 (Ohio App. 9 Dist., July 12, 2000). More recently, courts have identified two factors that help determine whether an out-of-state defendant "transacted business" within the meaning of the long-arm statute. *See, e.g., Paglioni Assocs. v. Winner Commn, Inc.*, No. 2:06-cv-00276, 2007 U.S. Dist. LEXIS 18612 (S.D. Oh. Mar. 16, 2007); *Shaker Constr. Group, LLC v. Schilling*, No. 1:08-cv-278, 2008 U.S. Dist. LEXIS 79645 (S.D. Oh. Sept. 18, 2008). The first factor is whether the out-of-state defendant initiated the dealing. *Paglioni,* 2007 U.S. Dist. LEXIS 114069 at *25. If it were the defendant who "reached out" to the forum state to create a business relationship, the defendant has transacted business within the forum state. *Id.* The second factor is "whether the parties conducted their negotiations or discussions in the forum state, or with terms affecting the forum state." *Id.* In addition to both of these factors, the plaintiff must demonstrate that there is a "substantial connection" between the defendant and the forum state. *Id.*

Even construed in the light most favorable to Plaintiff, the facts are insufficient to confer personal jurisdiction over Defendant under the "transacting business" subsection of Ohio's

Long-Arm statute. As to the first factor in the "transacting business" analysis, it is clear that Defendant did not initiate the dealing, or "reach out" to the forum state to create a business relationship. Here, it was Plaintiff who initially approached Defendant in order to recruit her as a co-author for the casebook.

As to the second factor, there is no indication that the parties conducted their negotiations within Ohio; indeed, the Defendant never even visited Ohio in connection with the casebook. Plaintiff instead relies upon the numerous emails, letters and phone calls between the parties to establish that Defendant "transacted business" in Ohio, but mere communications to an Ohio resident are insufficient to constitute "transacting business" within the meaning of the Long-Arm statute. *See Shaker Constr. Group, LLC v. Schilling*, No. 1:08-cv-278, 2008 U.S. Dist. LEXIS 79645 (S.D. Oh. Sept. 18, 2008). In *Shaker*, the plaintiff alleged that the out-of-state defendants had "transacted business" in Ohio based on their phone calls and emails to the plaintiff for purposes of negotiating transactional documents. *Id.* The District Court dismissed the case, and found that: "merely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute 'transacting business' within Ohio." *Id.* at 11.

It is also clear that Defendant's dealings and communications did not sufficiently "affect" the State of Ohio under the second factor. To establish an effect on Ohio, Plaintiff must primarily rely upon sales of the casebook in Ohio and economic harm to Plaintiff which arose from Defendant's delays. However, as the Magistrate Judge pointed out, "the sale and marketing of the casebook the parties authored was handled exclusively by Aspen– a third party." (Doc. No. 14. at 12)  The Defendant cannot be said to have "transacted business" in Ohio based upon

the independent marketing decisions of Aspen.  As for the economic harm to Plaintiff, it is well established that mere monetary injury to the Plaintiff is insufficient to constitute a large effect on a forum state.  *See, e.g., Paglioni Assocs. v. Winner Commn, Inc.*, No. 2:06-cv-00276, 2007 U.S. Dist. LEXIS 18612 at *25 (S.D. Oh. Mar. 16, 2007); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).

Finally, Plaintiff has failed to demonstrate  that there is a "substantial connection" between Defendant and the forum state.  The communications from Defendant to Plaintiff in Ohio regarding the Aspen agreement happened solely because Plaintiff happens to reside in Ohio, not because the Defendant wished to create any kind of "substantial connection" with the state.  And as the Magistrate Judge correctly noted, the separation agreement between the two parties does not demonstrate a substantial connection between Defendant and the State of Ohio, because "the clear impetus behind the separation agreement was to sever any relationship between the parties." ( Doc. No. 14. at 11)

Because Plaintiff has failed to demonstrate that Defendant initiated the dealings, that negotiations occurred in Ohio, that the dealings had a large effect on Ohio, or that Defendant has a substantial connection with Ohio, personal jurisdiction over Defendant does not exist under Ohio's Long-Arm statute.

## **2. The Magistrate Judge's Application of the 12(b)(2) Standard**

Plaintiff's second objection to the Magistrate Judge's Report and Recommendation is that the Magistrate Judge failed to construe the pleadings and affidavits in the light most favorable to the Plaintiff as required by *Soprema v. Beachside Roofing LLC*, 2010 U.S. Dist. LEXIS 25667 (N.D. Ohio 2010) (Boyko, J.).  Specifically, Plaintiff alleges that the Magistrate

Judge "diminished" the "totality of an over 10 year relationship with hundreds of communications from the Defendant to Ohio." (Document No. 15. at 4)

Contrary to Plaintiff's objection, the Magistrate Judge identified and applied the proper standard. The Magistrate Judge construed the facts in the light most favorable to Plaintiff when he chose to "assume" that Defendant's actions satisfied Ohio's Long-Arm statute, and when he assumed that a valid separation agreement exists. While the Magistrate Judge did summarize Defendant's contacts, he did not "diminish" them as Plaintiff alleges. Indeed, the Magistrate Judge refers to "many communications, edits and revisions" and a "series of telephone communications and emails" between the parties regarding the casebook. (Doc. No. 14. at 1)

Plaintiff also objects to the Magistrate Judge's characterization of the contract between the parties and Aspen as "an agreement for a lone transaction." However, the contract itself and all of the pleadings, motions and evidence in this case concern the "lone" agreement between the parties to co-author and publish a criminal law casebook. The mere fact that the transaction took time to complete due to the "nature of casebook authorship" does not warrant characterizing the agreement between the parties as "one of many written and oral transactions." To the extent that the contract contemplated "continuing obligations" between the parties in the form of revisions of the casebook, those obligations were severed when the parties entered the Separation Agreement. For these reasons, the Magistrate Judge did not fail to construe the facts in the light most favorable to Plaintiff.

### 3. The Magistrate Judge's Finding That Defendant is Not Subject to General Personal Jurisdiction in Ohio

Plaintiff's third objection to the Magistrate Judge's Report and Recommendation is that

9

the Magistrate Judge erred in finding that Defendant is not subject to "general" personal jurisdiction in Ohio. Because Defendant's contacts with Ohio are not of a continuous and systematic nature, the Magistrate Judge did not err in finding that Defendant is not subject to general personal jurisdiction in the State of Ohio.

As the Magistrate Judge correctly noted, "personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* (*citing Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)).

The Magistrate Judge relied on the reasoning from *IDFA, L.L.C. v. Schilling*, 2009 U.S. Dist. LEXIS 114069 (E.D. Mich. Nov. 18, 2009) to establish that Defendant is not subject to general personal jurisdiction in Ohio. In *Schilling*, the plaintiffs sued the defendant, a Colorado resident, in Michigan for declaratory relief with respect to certain intellectual property rights. *Id.* at 7. The plaintiffs argued that the defendant was subject to general personal jurisdiction in Michigan because his books were sold in bookstores across Michigan. *Id.* at 25. The district court rejected that argument, noting that the defendant "does not personally sell any books in Michigan and, in any event, plaintiffs provide no support for the view that the mere selling of books that a defendant asserts a copyright to constitutes contacts of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.*

The Magistrate Judge correctly held that Defendant is not subject to general personal jurisdiction in Ohio based upon the reasoning in *Schilling*. As in *Schilling*, Defendant here did not personally sell books in Michigan. Instead the marketing of the books was handled exclusively by Aspen.  Aspen's choice to market the casebook in Ohio, Defendant's knowledge of that choice, and Defendant's receipt of royalties does not confer general jurisdiction on Ohio courts.

Plaintiff attempts to distinguish *Schilling* by arguing that there was no proof, as there is here, that the defendant received *actual* royalties from the sale of the books in the forum state, and so the Court instead based its holding on the *potential* receipt of royalties from sales in the forum state.  However, there is no reason to believe that the Court's reasoning would have been any different had there been proof that the defendant actually received royalties from sales in Michigan.  Either way, general (or specific) jurisdiction would not be established by the fact that the defendant "may have known, but did not object to, the book being sold nationally."  *Id.* at 32.

Plaintiff further argues that the instant case is distinguishable from *Schilling* because "here, a continuous and systematic long term business relationship with an Ohio resident, unrelated to selling books, exists."  (Doc. No. 15. at 6). On the contrary, the pleadings, motions, and other evidence before the Court indicate that the relationship between the parties was very much "related to" selling books. The communications between the parties and the contract with Aspen all relate to eventually publishing and selling the casebook.  It is worth noting that these inter-state communications are themselves an insufficient basis for general jurisdiction, especially given that Defendant has never been employed in Ohio, has never had an office, bank account or telephone line in Ohio, and has never traveled to Ohio in connection with the

11

casebook.

Because Defendant's contacts with Ohio are not of a continuous and systematic nature, the Magistrate Judge's finding that Defendant is not subject to general personal jurisdiction in the State of Ohio is adopted.

### 4. The Magistrate Judge's Finding that Defendant is not Subject to Specific Personal Jurisdiction in Ohio

Plaintiff's fourth objection to the Magistrate Judge's Report and Recommendation is that the Magistrate Judge erred in finding that Defendant is not subject to "specific" personal jurisdiction in Ohio. Because Defendant did not purposefully avail herself of the privilege of acting in the forum state, the Magistrate Judge did not err in finding that Defendant is not subject to specific personal jurisdiction in Ohio.

Specific jurisdiction may be exercised when the claims in the case are related to or arise from the defendant's contacts with the forum state. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). The Sixth Circuit employs a three-prong test for determining whether specific jurisdiction may be exercised consistent with constitutional due process. First, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Southern Machine Co., v. Mahasco Ind.*, 401 F.2d 374, 381 (6th Cir. 1968). Second, "the cause of action must arise from the defendant's activities there." *Id.* Finally, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection to the forum to make the exercise of jurisdiction over the defendant reasonable." *Id.*

With respect to the first prong of the test, the Magistrate Judge relied on *Kerry Steel* and

*Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) to support the proposition that Defendant has not purposefully availed herself of the forum state.  In *Kerry Steel*, the plaintiff, a Michigan corporation, approached the defendant, an Oklahoma corporation, with an offer to sell the defendant $300,000 worth of steel coils. *Kerry Steel*, 106 F.3d at 148.  After negotiations conducted over the telephone and facsimile machine, the defendant accepted the offer by telephone. *Id.*  After taking possession of the goods, the defendant alleged they were defective and the plaintiff sued for payment in Michigan. *Id.*  The Court found that the defendant had not purposefully availed itself to Michigan.  Specifically, the court noted that "the mere fact that Paragon has entered into a contract with a Michigan corporation does not mean that Paragon purposefully availed itself of the benefits and protections of Michigan law." *Id.* at 151.  The Court emphasized that Paragon did not "reach out" to Kerry Steel given that "it was Kerry Steel that initially contacted Paragon in Oklahoma, and Paragon responded without leaving home, as it were." *Id.*  The Court dismissed the plaintiff's reliance on telephone calls and letters between the parties as "precisely the sort of 'random', 'fortuitous' and 'attenuated' contacts that the *Burger King* court rejected as a basis for haling non-resident defendants into foreign jurisdictions." *Id.*  Finally, the Court found "no indication in the record that Paragon intended to create an ongoing relationship in Michigan with Kerry Steele." *Id.*

In *Calphalon*, the defendant, a Minnesota resident, had been the manufacturer's representative for the plaintiff, an Ohio corporation, for seventeen years. *Calphalon*, 228 F.3d at 720.  The defendant visited the State of Ohio twice in connection with business and corresponded with the plaintiff throughout their relationship via telephone, fax and mail.  *Id*.  The Sixth Circuit again found that the existence of a contract between the parties was

13

insufficient to confer personal jurisdiction over the defendant, as it is the "quality of the parties' relationship, rather than the duration of that relationship" which is the proper subject of review. *Id.* at 722. In finding that the defendant had not purposefully availed himself to Ohio, the Court noted that the defendant's "phone, mail, and fax contact with Calphalon in Ohio and his physical visits there occurred solely because Calphalon chose to be headquartered in Ohio, not because he sought to further its business and create 'continuous and substantial' consequences there." *Id.* at 723.

The Magistrate Judge correctly found that *Kerry Steel* and *Calphalon* are controlling in the instant case. Both cases make it clear that the contract the parties entered into with Aspen is insufficient on its own to support specific jurisdiction. As in *Kerry Steele*, Defendant did not "reach out" to Plaintiff, as it was Plaintiff who originally approached Defendant with the proposition of co-authoring the casebook. Nor did Defendant intend to create an "ongoing relationship" beyond the agreement to co-author the casebook, especially since, as the Magistrate Judge points out, the clear impetus behind the separation agreement entered into by the parties "was to sever any relationship between the parties and to divide copyright ownership over the materials in the casebook." (Doc. No. 14. at 11) Finally, as in *Calphalon*, Defendant's phone, mail, and email contacts with Plaintiff occurred solely because Plaintiff chose to live and work in Ohio, and not because Defendant "sought to further its business and create 'continuous and substantial' consequences there." *Calphalon,* 228 F.3d at 723. Under *Calphalon* and *Kerry Steel*, Plaintiff did not purposefully avail herself to the State of Ohio.

Plaintiff attempts to distinguish *Calphalon* by pointing out that the defendant in *Calphalon* contracted to work for an Ohio resident in states other than Ohio, whereas here,

14

Defendant knew that casebooks would be sold within Ohio. Again, at most Defendant was merely "aware" that the casebook would sold in Ohio, considering that the sale and marketing of the casebooks was handled exclusively by Aspen. Such awareness is insufficient to establish specific jurisdiction. *Schilling* is on point here. In *Schilling*, the Court found that "purposeful availment would not be established by the fact that Schilling may have known, and did not object to, the book being sold nationally." *Schilling*, 2009 U.S. Dist. LEXIS 114069 at 32.

Plaintiff asserts that *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998) is controlling here rather than *Calphalon* or *Kerry Steele*. *Cole* involved a California defendant and an Ohio plaintiff who had engaged in an ongoing business relationship lasting over a decade. *Cole*, 133 F.3d at 435. Indeed, before the defendant moved to California, the parties had been business associates together in Cleveland, Ohio. *Id.* In finding that the defendant was subject to personal jurisdiction in Ohio, the Court observed that where "a non-resident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself." *Id.* at 436.

The facts of *Cole* are distinguishable from the instant case. In *Cole*, the parties had previously been business associates together in the forum state, whereas here Defendant has not so much as visited Ohio in connection with the casebook. Furthermore, the defendant in *Cole* initiated much of the contacts with Ohio. Here, it was Plaintiff who approached Defendant with the proposition of co-authoring a casebook.

Additionally, as the Magistrate Judge pointed out, the Sixth Circuit's holding in *Calphalon* indicates that *Cole* did not establish a *per se* rule that a contractual relationship, coupled with interstate communications automatically renders personal jurisdiction proper.

15

Indeed, in *Calphalon*, the parties had been in a contractual relationship for seventeen years, the defendant had communicated with the plaintiff in the Ohio throughout the business relationship, and the defendant had even visited Ohio twice in connection with business, yet the Sixth Circuit still found that the defendant had not purposefully availed himself to Ohio. *Calphalon*, 228 F.3d 720.

Following *Calphalon*, courts analyzing personal jurisdiction in the context of a contractual relationship have often distinguished *Cole,* or cautioned that its holding should not be read outside of the factual context in which it was written. *Shook, Inc. v. City of Moundsville* 2010 U.S. Dist. LEXIS 18499 at *19, 20 (S.D. Ohio 2010) (distinguishing *Cole*'s holding by saying "although this statement if read in isolation enhances the significance of contacts in Ohio by way of telephone and email negotiations that lead to contract formation, care must be taken not to read the statement outside of the factual context within which it was written"); *see also Condon v. Flying Puck, LLC*, 35 Fed Appx. 173, 174 (6th Cir. 2002) (distinguishing *Cole* by saying "the Ohio plaintiff and the California defendant conducted an ongoing business relationship lasting over 10 years, so that their business transactions 'continuously arose from plaintiff's activities in Ohio'"); *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 514 (6th Cir. 2006) ("*Cole* is inapposite to our case, because Malease initiated no contacts in Ohio); *Matrix Essentials*, 205 F.Supp.2d at 789 (distinguishing *Cole* from a situation where the parties did not have a pre-existing business relationship). In light of the factual differences between *Cole* and the instant case, and in light of *Calphalon,* the Magistrate Judge did not err in finding that *Cole* is not controlling and that Defendant has not purposefully availed herself to Ohio.

In order to establish specific jurisdiction, all three prongs of the Sixth Circuit's test must

16

be satisfied.  Because the first prong of the test for specific personal jurisdiction is not satisfied, the Magistrate Judge did not need to address the second and third prongs.  *Matrix Essentials*, 205 F. Supp.2d at 790.

### 5. The Magistrate Judge's Recommendation that the Case be Dismissed Without Prejudice

Plaintiff's fifth and final objection to the Magistrate Judge's Report and Recommendation is that the Magistrate Judge erred by recommending dismissal of the case without prejudice, rather than recommending the transfer of the case to the Northern District of California.  Plaintiff correctly notes that the Court can transfer this case without having personal jurisdiction over Defendant, pursuant to *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962).  However, Plaintiff raises the issue for the first time in his Objections to the Magistrate Judge's Report and Recommendation.  Plaintiff did not raise the issue of transfer of venue in any of his previous pleadings or motions in this case, including his opposition to Defendant's Motion to Dismiss.  Furthermore, while Plaintiff claims this case is "time sensitive," he fails to point to any statute of limitations issue.  For these reasons, the Court adopts the Magistrate Judge's recommendation that this case be dismissed without prejudice.

### IV. CONCLUSION

As set forth above, the Defendant's actions are not sufficient to subject her to personal jurisdiction in Ohio under Ohio's Long-Arm statute, nor are her actions sufficient for this Court to exercise personal jurisdiction over her consistent with constitutional due process.  The Magistrate Judge's Report and Recommendation is adopted, and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is granted.  Accordingly, Plaintiff's claims are dismissed

without prejudice.

       IT IS SO ORDERED.


                                     S/Christopher A. Boyko
                                     CHRISTOPHER A. BOYKO
                                     United States District Judge


May 24, 2010